IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No: 10-cv-02163-REB-CBS

MARGE ALLEY,
        Plaintiff,
v.

AURORA LOAN SERVICES LLC
        Defendant.

---

## RECOMMENDATION ON PENDING MOTIONS

---

Magistrate Judge Shaffer

THIS MATTER comes before the court on *pro se* Plaintiff Marge Alley's Petition for

Restraining Order (doc. #3), filed on September 3, 2010; Plaintiff's Petition for Temporary

Injunction (doc. #2), filed on September 3, 2010; and Defendant Aurora Loan Services LLC's

("ALS") Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (doc. #14), filed on September

29, 2010.  Defendant ALS filed Responses to Ms. Alley's motions for injunctive relief on

September 29, 2010 (doc. ##15 and 16).  Plaintiff filed her Response to Defendants (sic) Motion

to Dismiss (doc. #31) on November 2, 2010, and ALS filed its Reply in Support of Motion to

Dismiss (doc. #34) on November 15, 2010.

Pursuant to the Order of Reference to United States Magistrate Judge (doc. #5), dated

September 7, 2010, and the memoranda dated September 7 and 30, 2010 (doc. ##6 and 17), the

foregoing motions were referred to the Magistrate Judge.  I have carefully reviewed the pending

motions and related briefing, taken judicial notice of the court's entire file and considered the

applicable case law.  For the following reasons, I conclude that Defendant's Motion to Dismiss

should be granted, and that Ms. Alley's Petitions for Restraining Order and Temporary Injunction be denied.

## FACTUAL BACKGROUND

Although the court's ability to ascertain the relevant facts in this case is hampered by the lack of specificity in Plaintiff's pleading, some operative events can be identified through documents submitted by the parties in connection with the pending motions.[1]

On or about June 21, 2006, a Deed of Trust was prepared by Aurora Loan Services reflecting a promissory note signed by the "Borrower" Marge Alley and a debt of $230,000, plus interest, owed to the "Lender" Lehman Brothers Bank, FSB.[2]  *See* Exhibit B (doc. #14-2) attached to Defendant's Motion to Dismiss.  The original beneficiary of the Deed of Trust was Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for the original lender, Lehman Brothers Bank, FSB.  The debt memorialized by the Deed of Trust related to new construction located at 492 South Rockcliff Circle, Pagosa Springs, Colorado.  *Id.*  Also on June 21, 2006, Ms. Alley apparently signed a HUD Settlement Statement which also identified the "Lender" as Lehman Brothers Bank, FSB.  *See* Exhibit 1 (doc. #31, page 10 of 12), attached to

---

[1]On a motion to dismiss pursuant to Rule 12(b)(6), the court may consider materials in addition to the pleadings if such materials are public records or are otherwise appropriate for the taking of judicial notice.  Such items include orders, items appearing in the court record, and records filed in state court.  *See Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1279 n. 1 (10th Cir. 2004); *Wyser-Pratte Management Co, Inc. v. Telxon Corp.*, 413 F.3d 553, 560 (6th Cir. 2005) (holding that the district court may consider documents referred to in plaintiff's complaint and central to his claim, public records, matters of which a court may take judicial notice and decisions of governmental agencies) (citations omitted).

[2]Although the Deed of Trust does not describe any corporate relationship between Lehman Brothers Bank, FSB and Aurora Loan Services, it appears both entities shared a common address on Inverness Drive South, Englewood, Colorado.

2

Plaintiff's Response to Defendant's Motion to Dismiss.  The Deed of Trust was filed in

Archuleta County on June 22, 2006.

> In Colorado, consensual liens against real property are created by
> recordation of a deed of trust granted by the lender to the public trustee of the
> county where the property is situated.  Foreclosure of such liens is a hybrid
> process governed by statute.  The process involves issuance of orders by the state
> district court authorizing and confirming the sale.  C.R.C.P. 120; § 38-38-105,
> C.R.S.  However, the process of conducting the sale and the parties' rights in
> such process are largely administrative.

> Upon default, if the deed of trust so authorizes, the lender or holder of the
> note may direct the public trustee to sell the property at a foreclosure sale.  § 38-
> 38-101(1), C.R.S.  The lender must also seek an order from the state district court
> authorizing the sale under Rule 120.  Once a sale is authorized, the public trustee
> advertises and conducts the sale. § 38-38-101(4), C.R.S.  The property is sold to
> the highest bidder who receives a Certificate of Purchase.  Often, the purchaser is
> the holder of the deed of trust who bids all or part of the debt owed by the
> borrower.

> . . . After sale, the borrower and any junior lienholders may redeem the
> title to the property by paying, to the holder of the Certificate of Purchase, the
> sum for which the property was sold with interest from the date of sale, together
> with any taxes paid or other proper charges.  See § 38-38-101 to § 38-38-103,
> C.R.S. . . . If the redemption period passes, the holder of the Certificate of
> Purchase may seek an order confirming the sale and obtain a Trustee's Deed.

*Beeler Properties, LLC v. Lowe Enterprises Residential Investors, LLC,* 2007 WL 1346591 * 2

(D. Colo. May 7, 2007).[3]

On March 17, 2010, Aurora Loan Services, LLC, as the "Current Holder of Evidence of

Debt," filed with the Public Trustee a Notice of Election and Demand.[4]  Notice of this Election

was sent by mail to Ms. Alley and published in the Pagosa Springs Sun, a newspaper of general

---

[3]Copies of any unpublished decisions cited in this Recommendation are attached to the
Recommendation.

[4]Neither party has provided the court with documentation showing when or under what
circumstances ALS became the owner of the debt in question.

circulation in Archuleta County.  On April 18, 2007, Magistrate James E. Denvir of the

Archuleta County District Court entered an Order Authorizing Sale.  In that Order, Magistrate

Denvir specifically found that sale of the subject property was "proper under the Service

Members Civil Relief Act of 2003, that the provisions of Rule 120 of the Rules of Civil

Procedure have ben complied with, that the hearing on the motion was scheduled on March 26,

2010, that the provisions of C.R.C.P. 120 have been complied with and that the Motion should

be granted."  *See* Exhibit A (doc. #14-1) attached to Defendant's Motion to Dismiss.  The South

Rockcliff Circle property was the subject of a Public Trustee Foreclosure Sale on September 9,

2010, where it was purchased by Aurora Loan Services LLC as the highest bidder.  *Id.*

Ms. Alley initiated the instant action on September 3, 2010 with the filing of her

Original Petition (doc. #1).  Although the Original Petition alludes to various improper practices

perpetrated by the lending industry since the 1980s and refers to several federal statutes, Plaintiff

alleges six "Causes of Action:" (1) breach of fiduciary duty; (2) negligence/negligence *per se*;

(3) common law fraud; (4) breach of the implied covenant of good faith and fair dealing; (5)

violation of the Truth in Lending Act, 15 U.S.C. §§ 1601, *et seq*., and (6) intentional infliction of

emotional distress.  Plaintiff's prayer for relief seeks temporary and permanent injunctive relief,

quiet title in the subject property, rescission of her loan contract and restitution by ALS,

"disgorgement of amounts wrongfully acquired by Defendants," compensatory and punitive

damages, and pre- and post-judgment interest.

## ANALYSIS

I.    *Defendant's Motion to Dismiss*

Rule 12(b)(6) states that a court may dismiss a complaint for "failure to state a claim

upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6).  In deciding a motion under

Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view

these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d

1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir.

2009)).  However, a plaintiff may not rely on mere labels or conclusions, "and a formulaic

recitation of the elements of a cause of action will not do." *See Bell Atlantic Corp. v. Twombly*,

550 U.S. 544, 555 (2007).

To withstand a motion to dismiss, a complaint must contain enough allegations of fact "to

state a claim to relief that is plausible on its face." *Id.*  As the Tenth Circuit explained in *Ridge*

*at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007), "the mere metaphysical

possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is

insufficient; the complaint must give the court reason to believe that *this* plaintiff has a

reasonable likelihood of mustering factual support for *these* claims."  "The burden is on the

plaintiff to frame 'a complaint with enough factual matter (taken as true) to suggest' that he or

she is entitled to relief." *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting

*Twombly*, 555 U.S. at 556).  A complaint must set forth sufficient facts to elevate a claim above

the level of mere speculation.  *Id.*

Dismissal of a claim under Rule 12(b)(6) is appropriate where the plaintiff fails to state a claim upon which relief can be granted.  For a complaint to state a claim it must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Rule 8(a)'s short and plain statement mandate requires that a plaintiff allege enough factual matter that, taken as true, makes his claim to relief . . . plausible on its face.

The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be

granted.  In doing so, the Court must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff.  However, the Court need not accept conclusory allegations.

>Generally, [s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests.  However, where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not shown-that the pleader is entitled to relief.  Even though modern rules of pleading are somewhat forgiving, a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.  The plausibility standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible.

*Jordan-Arapahoe, LLP v. Board of County Commissioners of the County of Arapahoe*, 2009 WL 2924777, at *2 (D. Colo. Sept. 9, 2009) (internal quotation marks and citations omitted).  The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed."  *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

A.    Application of the *Rooker-Feldman* Doctrine

As a threshold matter, Defendant ALS invokes the *Rooker-Feldman* doctrine to argue that "this Court lacks subject matter jurisdiction to entertain plaintiff's claims, and her complaint should be dismissed in its entirety."  Although Defendant's Motion to Dismiss specifically invokes Fed. R. Civ. P. 12(b)(6) in arguing that Plaintiff has failed to assert any valid claim for relief, the *Rooker-Feldman* doctrine implicates the federal court's subject matter jurisdiction.  *Cf. Guttman v. Khalsa*, 401 F.3d 1170, 1173 n. 2 (10th Cir.) (holding that *"Rooker-Feldman* is a matter of federal law and operates as a subject-matter jurisdictional bar that may be raised at any time"), *judgment vacated on other grounds*, 546 U.S. 801 (2005).  *See also Kenmen Engineering v. City of Union*, 314 F.3d 468, 479 (10th Cir. 2002) ("The *Rooker-Feldman* doctrine is a

6

*jurisdictional* prohibition") (emphasis in original).

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a motion to dismiss may be granted if the court does not have subject matter jurisdiction over the matter.  In addressing a jurisdictional challenge, the court need not presume all of the allegations contained in the complaint to be true, "but has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts. . . ." *United States v. Rodriguez Aguirre*, 264 F.3d 1195, 1204 (10th Cir. 2001) (citation omitted).

The *Rooker-Feldman* doctrine is based upon an inference that follows from 28 U.S.C. § 1257(a) which provides that "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari." *Guttman v. Khalsa*, 401 F.3d at 1173.  "In *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-416 (1923), the Supreme Court held that lower federal courts may not hear claims actually decided by a state court." *Crutchfield v. Countrywide Home Loans*, 389 F.3d 1144, 1147 (10th Cir. 2004).  "Sixty years later in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 483 n. 16 (1983), the Court extended the holding of *Rooker* to claims that are 'inextricably intertwined' with a state court judgment." *Id*.  *See also Guttman v. Khalsa*, 401 F.3d at 1173 ("Under the doctrine that has arisen from two Supreme Court cases, . . . a federal district court does not have subject matter jurisdiction to hear appeals from final judgments of state courts").

However, the *Rooker-Feldman* doctrine "is confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."

*Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005).  *See also Bolden v. City of Topeka, Kansas*, 441 F.3d 1129, 1143 (10th Cir. 2006) ("Appellate review – the type of judicial action barred by *Rooker-Feldman* – consists of a review of the proceedings already conducted by the lower tribunal to determine whether it reached its result in accordance with law"); *Kiowa Indian Tribe of Oklahoma v. Hoover*, 150 F.3d 1163, 1169 (10th Cir.1998) (under the *Rooker-Feldman* doctrine, a party who loses in state court is barred "from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights").

In the wake of the Supreme Court's decision in *Exxon Mobil*, the Tenth Circuit has held that *Rooker-Feldman* applies only to federal suits that are filed after state proceedings are final. *See Guttman v. Khalsa*, 446 F. 3d at 1032.  *See also Allen v. National City Bank of Pennsylvania*, 2007 WL 2341010, *5 (D. Colo. 2007).  The Tenth Circuit has agreed with other Circuit Courts on "several situations in which a state-court judgment could be considered final for *Rooker-Feldman* purposes . . . ."  *Bear v. Patton*, 451 F.3d 639, 641 (10th Cir. 2006) (citations omitted). For example, a state court judgment would be considered final for purposes of *Rooker-Feldman* where "a lower state court issues a judgment and the losing party allows the time for appeal to expire," or "if the state action has reached a point where neither party seeks further action."  *Id.* at 642. This court must determine whether Ms. Alley is seeking what in substance would be appellate review of a "final judgment" entered by the Archuleta County District Court.

Defendant's motion contends, and Ms. Alley's Response does not dispute, that on April 5, 2010, the Archuleta County District Court issued an Order Authorizing Sale pursuant to Colorado Rule of Civil Procedure 120.  Defendant has advised this court, again without

8

refutation by Ms. Alley, that the subject property was sold at a foreclosure sale on September 9,

2010, six days after Plaintiff initiated the instant lawsuit.  Rule 120 states that "[t]he court shall

require a return of sale be made to the court" and that the court "shall . . . enter an order

approving the sale" if it appears that the sale was in conformity with the authorization for sale.

*See* C.R.C.P. 120(g).  In fact, the April 5, 2010 Order Authorizing Sale expressed required that

"a return of sale be made to this Court."  Simple logic suggests that the Archuleta County

District Court could not enter a final "order approving the sale" until sometime on or after

September 9, 2010.  Based upon the foregoing chronology of events, this court cannot conclude

that Ms. Alley is seeking relief for harms caused by a state-court judgment rendered before these

federal proceeding commenced on September 3, 2010 and therefore, cannot dismiss this action

based upon the *Rooker-Feldman* doctrine.  *Cf. Brode v. Chase Home Finance, LLC*, 2010 WL

2691693*, at *6 (D. Colo. 2010) (holding that plaintiff's claims were not barred by *Rooker-*

*Feldman* where the state court had not issued a final approval of the Public Trustee's sale).

*Compare Rousseau v. Bank of New York*, 2009 WL 3162153, at *1 (D. Colo. 2009) (plaintiff

filed the *pro se* complaint after the subject property had been sold at a public trustee sale and the

state district court entered an order approving that sale).[5]

B.      Pleading Deficiencies

        Rule 8(a) of the Federal Rules of Civil Procedure states that a complaint shall contain a

"short and plain statement of the claim showing that the pleader is entitled to relief."  This

---

[5]I also note that the *Rooker-Feldman* doctrine can not be invoked to foreclose federal
statutory claims (such as Plaintiff's Truth in Lending Act claim) or common law claims that seek
money damages only or that are wholly unrelated to the state court proceedings involving
foreclosure of the subject property.  *Cf. Rohr v. Home Loans Corp.*, 2005 WL 2027684, at *3 (D.
Colo. 2005) (Blackburn, J.).

pleading requirement is intended to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993). *See also Monument Builders of Greater Kansas City, Inc. v. American Cemetery Ass'n of Kansas*, 891 F.2d 1473, 1480 (10th Cir. 1989); *TV Communications Network, Inc. v. ESPN, Inc.*, 767 F. Supp. 1062, 1069 (D. Colo. 1991). The information provided by the pleader must be adequate to set forth the basis of his claim "as distinguished from a bare averment that he wants relief and is entitled to it." *See* 5 Wright and Miller, *Federal Practice and Procedure* § 11215, at 194 (3d ed. 2004). The court may disregard and dismiss without a hearing claims that are vague and conclusory. *Johnson v. Richards*, 617 F. Supp. 113, 114 (W.D. Okla. 1984). *See also Cotner v. Hopkins*, 795 F.2d 900, 902 (10th Cir. 1986) (failing to provide specific factual allegations renders a complaint vague and conclusory). A decision to dismiss a complaint pursuant to Rule 8 is within the trial court's sound discretion. *See Atkins v. Northwest Airlines, Inc.*, 967 F.2d 1197, 1203 (8th Cir. 1992); *Gillibeau v. City of Richmond*, 417 F.2d 426, 431 (9th Cir. 1969).

Plaintiff's Original Petition must be construed liberally because she is representing herself. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards that formal pleadings drafted by lawyers"); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[a] pro se litigant's pleadings are to be construed liberally") (citations omitted). If a complaint reasonably can be read "to state a valid claim on which [a] plaintiff could prevail, [a court] should do so despite the plaintiff's failure to cite proper legal authority, [her] confusion of various legal theories, [her] poor syntax and sentence construction, or [her] unfamiliarity with pleading requirements." *Id.* However, a

plaintiff may not defeat a motion to dismiss by alluding to facts that have not been alleged, or by

suggesting violations that have not been pled.  *Associated General Contractors of California,*

*Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).  *See also Whitney v.*

*State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (court may not "supply additional

factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d

1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff

in the absence of any discussion of those issues").[6]

        In this case, the Original Petition falls short of the pleading requirements imposed by

Rule 8.  Aurora Loan Services is mentioned by name only three times in this 24-page pleading;

in the caption, on the first page under the heading "Parties," and in a sentence on the third page

which refers generally to practices within the lending industry.  The Original Petition never

provides any factual allegations describing Defendant's connection to the loan at issue in this

case.

        While the Original Petition says very little about Aurora Loan Services, it is replete with

references to unnamed phantom "Defendants."  For example, in her "Statement of Cause," Ms.

Alley alleges that "Defendants, acting in concert and collusion with others, induced Petitioner to

enter into a predatory loan agreement with Defendant," that "Defendants committed numerous

acts of fraud against Petitioner in furtherance of a carefully crafted scheme intended to defraud

------------------------

        [6]Plaintiff's Response argues that Defendant's motion should be denied because she is
prepared to prove her claims at trial "after complete discovery."  That argument is unavailing as
the Supreme Court has held that "[t]hreadbare recitals of the elements of a cause of action,
supported by mere conclusory statements" will "not unlock the doors of discovery for a plaintiff
armed with nothing more than conclusions."  *Ashcroft v. Iqbal*, _ U.S. _, 129 S.Ct. 1937, 1949-
50 (2009).

Petitioner," that "Defendants failed to make proper notices to Petitioners that would have given

Petitioner warning of the types of tactics used by Defendants to defraud Petitioner," and that

"Defendants charged false fees to Petitioner at settlement."  ALS and this court are left to guess

at the identity of these putative "Defendants."

Ms. Alley further avers that "Petitioner Will Prove" various wrongful conduct attributed

to an unspecified "Lender."  Although the HUD settlement statement dated June 21, 2006 and

attached as Exhibit 1 to Plaintiff's Response to Defendants Motion to Dismiss lists "Lehman

Brothers Bank, FSB" as the lender on the subject property, that entity is not a named defendant

in this action.  Ms. Alley contends that the "Lender maliciously induced Petitioner to accept a

loan product, Lender knew, or should have known, Petitioner could not afford in order to

unjustly enrich Lender."  Yet, there are no well-pled allegations that ALS had any role in the

offer or acceptance of the loan product which was the subject of the June 21, 2006 settlement

statement.

Elsewhere in the Original Petition, Ms. Alley alleges wrongful conduct by an unspecified

"Agent" who purportedly "practiced up-selling to Petitioner," "further defrauded Petitioner by

failing to disclose Agent's conspiratorial relationship to Lender," "violated Agent's fiduciary

duty to petition . . . through a series of carefully crafted connivance," "proactively made

knowingly false and misleading statements of alleged fact to Petitioner," and "[gave] partial

disclosure of facts intended to directly mislead Petitioner for the purpose of inducing Petitioner

to make decisions concerning the acceptance of a loan product offered by the Lender."  Once

again, the Original Petition does not identify ALS as the "Agent" who engaged in these alleged

wrongful acts.

To overcome these pleading deficiencies, Ms. Alley argues that "Plaintiff has alleged a conspiracy on the part of all defendants which gives Plaintiff a claim against all defendants equally as coconspirators." *See* Response at 4. The Original Petition alleges that "Defendants" acted "in concert and collusion with others" in a conspiracy that included "acts of negligence, breach of fiduciary duty, common law fraud, fraud by non-disclosure, and tortuous acts of conspiracy and theft." These vague references to conspiracy are not sufficient under Rule 8.

In order to state a claim for civil conspiracy under state law, a plaintiff must allege: (1) an object to be accomplished; (2) an agreement by two or more persons on a course of action to accomplish that object; (3) in furtherance of that course of action, one or more unlawful acts which were performed to accomplish a lawful or unlawful goal, or one or more lawful acts which were performed to accomplish an unlawful goal; and (4) damages to the plaintiff as a proximate result. *Magin v. DVCO Fuel Systems,Inc.*, 981 P.2d 673, 674-75 (Colo. App. 1999). "[P]ersons or parties may not be held liable for doing in a proper manner that which they had a lawful right to do." *Id*. at 675 (citation omitted). Mere agreement to do something that happens to aid in the commission of a tort, without more, does not constitute civil conspiracy. *Powell Products, Inc. v. Marks*, 948 F. Supp. 1469, 1480 (D. Colo. 1996) (holding that a "plaintiff cannot succeed on its claims for civil conspiracy without showing that each defendant agreed to do something in furtherance of the conspiracy, knowing of its improper purpose"). *Id*.

To the extent that Ms. Alley is attempting to assert claims against ALS for conspiracy pursuant to federal law, she must allege facts showing "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or

injury upon another; and an overt act that results in damage." *Baker v. Smith*, 771 F. Supp. 1156,

1158 (D. Kan. 1991) (internal quotation marks and citation omitted). "[C]onclusory allegations

that defendants acted in concert, or conspired without specific factual allegations to support such

assertions are insufficient." *Merritt v. Hawk*, 153 F. Supp. 2d 1216, 1225 (D. Colo. 2001)

(internal quotation marks and citation omitted).

Here, Plaintiff offers nothing more than vague and completely speculative allegations of

a conspiracy. *Cf. Leon v. Murphy*, 988 F.2d 303, 311 (2d Cir. 1993) (to survive a motion to

dismiss, a complaint alleging a conspiracy to deprive a person of constitutional rights must

contain more than conclusory, vague or general allegations of conspiracy); *Alfaro v. E.F. Hutton*

*& Co., Inc.*, 606 F. Supp. 1100, 1117 (E.D. Pa. 1985) (holding that a general conspiracy

allegation without a statement of facts is insufficient to state a cause of action). *See also Murray*

*v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995) (conclusory statements are insufficient to

allege a claim of conspiracy).

More to the point, the Original Petition fails to provide "fair notice" of the basis for any

conspiracy claim against ALS. The Tenth Circuit has acknowledged that a conspiracy allegation

that mentions "no specific time, place or person involved in the alleged conspirac[y]" gives the

named defendant "no idea where to begin." *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th

Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 565 n. 10 (2007). Ms. Alley's

conclusory allegations of a conspiracy are not sufficient to survive a motion to dismiss. *Cf. Scott*

*v. Hern*, 216 F.3d 897, 908 (10th Cir. 2000) (upholding dismissal of an amended complaint that

failed to provide factual averments as to the nature of the alleged conspiracy or the defendant's

role in the alleged activities); *Sales v. Murray*, 862 F. Supp. 1511, 1517 (W.D. Va. 1994)

14

(conspiracy complaint must allege facts suggesting agreement or meeting of minds).

      C.      <u>Plaintiff's Common Law Claims</u>

Ms. Alley's breach of fiduciary duty claim broadly refers to "Defendants Agent, appraiser, trustee, Lender, et al. and each of them."  None of those individuals or entities are specifically named in the Original Petition or identified as Aurora Loans Services.  Moreover, the Original Petition does not allege specific facts to establish a fiduciary relationship between ALS and Ms. Alley.  It is axiomatic that a claim for breach of fiduciary duty necessarily requires as a precondition the existence of a fiduciary relationship between the parties.  *Maalouf v. Salomon Smith Barney, Inc.*, 2003 WL 1858153, at *5 (S.D.N.Y. 2003) ("Entering into a conventional business relationship generally does not create a fiduciary relationship.").  Colorado law recognizes that a *per se* fiduciary relationship does not arise simply by virtue of a borrower-lender relationship.  *First National Bank of Meeker v. Theos*, 794 P.2d 1055, 1060 (Colo. App. 1990).  While a confidential relationship might arise where the plaintiff has placed special trust or confidence in another party to act in the plaintiff's interest, the mere existence of a confidential relationship will not support a claim for breach of fiduciary duty.  *Id.* at 1061.  Ms. Alley has not come forward with well-pled facts that would establish a cause of action for breach of fiduciary duty against the only named defendant.

The same shortcomings plague Ms. Alley's claim for "negligence/negligence per se." That claim contends that "Defendants" owed Plaintiff a "duty to properly perform due diligence as to the loans and related transactional issues." However, this cause of action is based on little more than conclusory statements and unsubstantiated assumptions that unidentified "Defendants" knew or should have known about Plaintiff's loan transaction.  At this juncture,

there are no well-pled facts that would set forth Aurora Loan Service's obligation to perform any due diligence in connection with a loan between Ms. Alley and Lehman Brothers Bank, FSB. This will not suffice to defeat a motion to dismiss.  *Cf. Georgacarakos v. Nalley*, 2009 WL 1873999, at *1 (D. Kan. 2009) (to avoid dismissal under Rule 12(b0(6), a complaint must present factual allegations that rise about the speculative level).

Plaintiff's third "cause of action" alleges "common law fraud" based upon misrepresentations by unnamed "Agents."  According to Ms. Alley, "[w]hen the Agents made the representation alleged herein, he/she/it had no reasonable ground for believing them to be true."  Plaintiff's fraud claim is patently deficient.  As noted previously, a properly drafted complaint should "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Here, both ALS and the court are left to guess at the identity and even the gender of the "Agents" who purportedly made the misrepresentations in question.  There is nothing in the Original Complaint to suggest that ALS is the "Agent" in question.

More importantly, the fraud claim against ALS fails to comply with the requirements of Fed. R. Civ. P. 9(b).  Rule 9(b) requires that "in all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity."  *See Jurgens v. Abraham*, 616 F. Supp. 1381, 1386 (D. Mass. 1985) (holding that Rule 9(b) pleading requirements are applicable even if the complaint does not explicitly use the word "fraud").  Compliance with Rule 9(b) provides a defendant with fair notice of the plaintiff's claims and the factual grounds upon which they are based.  *United States v. Cheng*, 184 F.R.D. 399, 401 (D. N.M. 1998).  *See also Gardner v. Investors Diversified Capital, Inc.*, 805 F. Supp. 874, 876 (D. Colo. 1992) (allegations of fraud must provide sufficient notice of the grounds upon which the claim rests to permit the defendant

to answer or otherwise defend itself). "Simply stated, a complaint must 'set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997). Although Ms. Alley's fraud cause of action is predicated on "the representation alleged herein," there are in fact no representations attributed to ALS and alleged with specificity in the Original Petition. *Cf. United States ex rel. Erickson v. Uintah Special Services District*, 395 F. Supp. 2d 1088, 1100 (D. Utah 2005) (holding that a failure to allege fraud with particularly constitutes a failure to state a claim for relief resulting in dismissal under Rule 12(b)(6).

Plaintiff's cause of action for "breach of the implied covenant of good faith and fair dealing" again refers to unidentified "Defendants" and makes no direct reference to Aurora Loan Services. Moreover, this cause of action does not identify a contract between Ms. Alley and Aurora Loan Services that could provide the basis for an implied covenant. "[O]utside of the insurance context, there is no independent cause of action for breach of covenant of good faith and fair dealing in the absence of a contract." *Sweeney v. Marvin Windows, Inc.*, 2010 WL 4256195, at *5 (D. Colo. 2010). Similarly, the Tenth Circuit has held that "[t]he scope of the implied covenant of good faith and fair dealing 'turns on the extent to which the contracting parties have defined their expectations and imposed limitations on contract terms.'" *J.R. Simplot v. Chevron Pipeline Co.*, 563 F.3d 1102, 1113 (10th Cir. 2009).

Finally, Ms. Alley's claim for intentional infliction of emotional distress simply alleges that "[t]he conduct committed by Defendants, driven as it was by profit at the expense of increasingly leveraged and vulnerable consumers who place their faith and trust in the superior

knowledge and position of Defendants, was extreme and outrageous and not be tolerated by

civilized society."  While the reference to plural "Defendants" seems to encompass the lending

industry generally, this cause of action as pled conspicuously lacks any reference to Aurora Loan

Services or intentional action taken by ALS.  Under Colorado law, "the level of outrageousness

required for conduct to create liability for intentional infliction of emotional distress is extremely

high."  *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo. 1999).  "Liability has been found

only where the conduct has been so outrageous in character, and so extreme in degree, as to go

beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in

a civilized community."  *Id.* quoting *Rugg v. McCarty*, 476 P2d 753,756 (1970)).  The Original

Petition fails to allege any facts that would sustain a claim for intentional infliction of emotional

distress against the only defendant named in the action.

By discussing Ms. Alley's pleading deficiencies at length, my hope, in part, is to reach a

wider audience.  In the course of preparing this Recommendation, I found sample pleadings

available on the internet that are identical to paragraphs in Ms. Alley's Original Petition.  I

suspect, but cannot prove, that the Original Petition was pulled almost verbatim off a website.

That website may well have disclaimed any intention to offer legal advice, but a home owner

desperate to forestall foreclosure proceedings may not appreciate the difference between vague

generalities and thoughtful legal analysis.  For example, Ms. Alley's claim for breach of the

implied covenant of good faith and fair dealing cites several reported decisions by California

state courts.  As a *pro se* litigant, Ms. Alley would not know that California state court decisions

have no precedential value nor any controlling effect in a case brought in the United States

District Court for the District of Colorado.  Acting in reliance on this "internet" complaint,

18

Plaintiff would not be aware of the decision in *Premier Farm Credit, PCA v. W-Cattle, LLC*, 155 P.3d 504, 523 (Colo. App. 2006) which held that in the absence of special circumstances, the relationship between a lending institution and its customer is merely one of creditor and debtor and not that of a fiduciary.

Similarly, an "internet" complaint that purports to address the "sufficiency of pleading" standard without acknowledging *Twombly* and its progeny provides false comfort for a *pro se* litigant desperate to find a safe-harbor.  Ms. Alley apparently relied upon boilerplate language from some "internet" site that speaks of practices designed to dupe an "unsophisticated borrower."  One is left to wonder to what extent the internet exposes "unsophisticated litigants" to the same danger.[7]

D.      Plaintiff's Statutory Claims

The Original Petition specifically lists as a cause of action "Violation of Truth in Lending Act ["TILA"], 15 U.S.C. § 1601 *et seq.*"  In support of this specific claim, Ms. Alley simply "incorporates by reference . . . each and every allegation contained in all of the paragraphs of the General Allegations and Facts Common to All Causes of Action," and expresses her belief "that Defendant's violation of the provision of law rendered the credit transaction null and void, invalidates Defendant's claimed interest in the Subject Property, and entitles Petitioner to damages as proven at trial." Although the Original Petition contains passing references to TILA, Ms. Alley never identifies with particularity which provisions of the Truth in Lending Act she

---

[7]These websites presumably do not alert the public to the several court decisions that have roundly criticized the legal sufficiency of the sample complaint.  *See e.g.*, *Lefton v. GMAC Mortgage*, 2011 WL 761235 (S.D. Cal. 2011); *Sanders v. Ocwen Loan Servicing*, 2011 WL 1898911 (W.D. La. 2011).; *Vann v. Aurora Loan Services LLC*, 2011 WL 2181861 (N.D. Cal. 2011).

believes were violated by ALS or when those alleged violations occurred.

The Truth in Lending Act provides protections for consumers engaging in certain types of credit transactions. The statute states, in pertinent part:

> (a) Disclosure of obligor's right to rescind.  Except as otherwise provided in this section, in the case of any consumer credit transaction . . . in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this title [15 USCS §§ 1601 et seq.], whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so.
>
> (e) Exempted transactions; This section does not apply to--
>
> (1) a residential mortgage transaction as defined in section 103(w) [15 USCS § 1602(w)];

15 U.S.C. § 1635.  Section 1602(w) defines residential mortgage transactions as "a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling."  15 U.S.C. § 1602(w).

The 2006 Deed of Trust indicates that Ms. Alley's loan was for "NEW CONSTRUCTION" located at 492 South Rockcliff Circle, Pagosa Springs, Colorado."  If that is the case, then Plaintiff's loan involved a "residential mortgage transaction" exempt from the rescission requirement pursuant to § 1635.  *See, e.g., Barrett v. JP Morgan Chase Bank, N.A.,* 445 F.3d 874, 879 (6th Cir. 2006) (TILA excepts four transactions from the general right to rescind, including "residential mortgage transactions," which are financing agreements arising

from the acquisition or initial construction of a home); *In Re Schweizer*, 354 B.R. 272, 280 (D.

Idaho) ("The right of rescission does not apply to residential mortgage transactions.") (citing 15

U.S.C. §§ 1635(e)(1)); *Perkins v. Central Mortgage Co.*, 422 F. Supp. 2d 487, 489 (E.D. Pa.

2006) ("The right to rescind does not apply to residential mortgage transactions"); *Briggs v.

Provident Bank*, 349 F. Supp. 2d 1124, 1129-30 (N.D. Ill. 2004) ("Under section 1635(e) of

TILA certain transactions are exempt from the right of rescission and disclosure requirements of

section 1635, including a residential mortgage transaction as defined in section 1602(w).").

Without more specific factual allegations, Ms. Alley's TILA cause of action does not "to state a

claim to relief that is plausible on its face" and should be dismissed pursuant to Rule 12(b)(6).[8]

Plaintiff's claim for damages under TILA also fails as time-barred to the extent she filed

this case more than one year after the loan transaction occurred.[9]  An action for damages under

---

[8]The Original Petition also alludes to the federal Home Ownership and Equity Protection Act of 1994 ("HOEPA"), 15 U.S.C. § 1639 *et seq.*  HOEPA is an amendment to TILA codified at 15 U.S.C. § 1639 and enacted in 1994 to protect consumers against various practices in connection with certain high interest rate loans, which creates "a special class of regulated loans that are made at higher interest rates or with excessive costs and fees." *Lynch v. RKS Mortgage, Inc.*, 588 F. Supp. 2d 1254, 1260 (E.D. Cal. 2008) (internal quotation marks and citation omitted).  In order to be subject to the protections afforded by HOEPA, one of two factors must be established.  "Either the annual percentage rate of the loan at consummation must exceed by more than 10 percent the applicable yield on treasury securities, or the total points and fees payable by the consumer at or before closing has to be greater than 8 percent of the total loan amount, or $400.00." *Lynch*, 588 F. Supp. 2d at 1260 (citing 15 U.S.C. § 1602(aa)(1) & (3); 12 C.F.R. § 226.32(a)(1)).  *See also D.M. Johnson Family Trust v. Countrywide Home Loans*, 2009 WL 3615690 * 6 (D. Utah Oct. 28, 2009) ("HOEPA applies if the interest rate of the loan exceeds a certain threshold, or if the total points and fees exceed eight percent of the loan.").  Ms. Alley has pled no facts that would suggest her loan was subject to HOEPA.

[9]Although the expiration of the statute of limitations is an affirmative defense, where the complaint or referenced documents clearly indicate that a claim is time-barred, the court may adjudicate the defense on a motion to dismiss. *Aldrich v. McCulloch Properties, Inc.*, 627 F.2d 1036, 1041 (10th Cir. 1980) (noting that a statute of limitations defense is appropriately resolved pursuant to a Fed.R.Civ.P. 12(b) motion "when the dates given in the complaint make clear that

TILA must be filed "within one-year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e).  *See also Heil v. Wells Fargo Bank, N.A.*, 298 Fed. Appx. 703, 706 (10th Cir. (Utah) Oct. 9, 2008) (suit barred by one-year statute of limitations period of § 1640(e)).  The limitations period on a TILA claim begins running on the date the loan documents are signed.  *See Meyer v. Ameriquest Mortgage Co*., 342 F.3d 899, 902 (9th Cir. 2003).  *See also Delino*, 628 F. Supp. 2d 1226, 1233 (S.D. Cal. 2009) (one year statute of limitations "typically run[s] from the date of the loan execution"); *Tucker v. Beneficial Mortg. Co.*, 437 F. Supp. 2d 584, 589 (E.D.Va. 2006) ("the date of the occurrence of the violation is not later than the date the plaintiff enters the loan agreement") (internal quotation marks and citation omitted).  Here, it is undisputed that Ms. Alley entered into the loan transaction on June 21, 2006 and filed the instant action on September 3, 2010, more than four years later.  Therefore, Plaintiff's claim for damages under TILA is time-barred under the applicable statute of limitation, 15 U.S.C. § 1640(e).

In her Original Petition and Response to Defendant's Motion to Dismiss, Ms. Alley invokes the doctrine of equitable tolling in an effort to avoid the statute of limitations.  *See Heil v. Wells Fargo Bank, N.A.*, 298 Fed. Appx. 703, 706 (citing *Ellis v. Gen. Motors Acceptance Corp.*, 160 F.3d 703, 706-08 (11th Cir.1998) (citing cases and recognizing that all courts directly considering the issue have decided TILA is subject to equitable tolling)).  However, on that issue, Ms. Alley bears the burden of proof.  *Olson v. Federal Mine Safety & Health Review Commission*, 381 F.3d 1007, 1014 (10th Cir. 2004).  *Cf. Kraft v. JP Morgan Chase Bank, National Association*, 2010 WL 4869099, at *4 (D. Colo. 2010) (Blackburn, J.) (noting that the plaintiff "bears a heavy burden of demonstrating a viable basis for equitable tolling" where a

the right sued upon has been extinguished").

claim is untimely on its face).  I find that Plaintiff has failed to sustain that burden.

"'Equitable tolling' is the doctrine under which plaintiffs may sue after the statutory time period has expired if they have been prevented from doing so due to inequitable circumstances." *Heil v. Wells Fargo Bank, N.A.,* 298 Fed. Appx. 703, 706 (10th Cir. 2008) (quoting *Moor v. Travelers Ins. Co.*, 784 F.2d 632, 633 (5th Cir. 1986)).  *Cf. Kraft*, 2010 WL 4869099, at *4 ("Equitable tolling is limited to 'rare and exceptional circumstances' and thus 'is only available when [litigants] diligently purse [their] claims and demonstrate [ ] that the failure to timely file was caused by extraordinary circumstances beyond [their] control.'").

In her Response brief, Ms. Alley argues that Defendants made certain unspecified "proactive statements" concerning the value of her property, conditions in the real estate market, and the propriety of the fees charged at closing, "while withholding facts that would have given Plaintiff full disclosure."  *See* Plaintiff's Response to Defendant's Motion to Dismiss, at 2.  Ms. Alley also contends that equitable tolling is warranted because "Defendants acted in concert an[d] collusion . . . in an organized scheme . . . to establish trust, then use that trust to perpetrate fraud against Plaintiff."  *Id.* at 3.  The "facts" that Plaintiff relies upon to warrant equitable tolling are as amorphous and conclusory as the underlying statutory claims she seeks to preserve. *Cf. Rhodes v. Aurora Loan Services*, 2010 WL 3219310, at *2 (D. Utah 2010).  *See also Wadhwa v. Aurora Loans Services, LLC*, 2011 WL 1601593, at *3 (E.D. Cal. 2011) (holding that equitable tolling was not warranted where plaintiffs failed to offer any factual allegations to show they were unable to compare the allegedly improper disclosures in the loan documents with the required disclosures under TILA, and did not describe any conduct by the defendants that prevented plaintiffs from discovering the alleged violations); *Kennedy v. Wells Fargo Bank,*

23

*N.A.*, 2011 WL 1838771, at *4 (N.D. Cal. 2011) (holding that conclusory allegations are insufficient to support equitable tolling).  In short, Ms. Alley has failed to present facts sufficient to warrant equitable tolling in this case.

Although not specifically denominated as a separate "cause of action," Plaintiff's Original Petition contends that ALS is liable for "apparent RESPA [Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.*] violations" including

> Good Faith Estimate not within limits, No HUD-1 Booklet, Truth in Lending Statement not within limits compared to Note, Truth in Lending Statement not timely presented, HUD-1 not presented at least one day before closing, No Holder Rule Notice in Note, No 1st Payment Letter.

> The closing documents included no signed and dated: Financial Privacy Act Disclosure; Equal Credit Reporting Act Disclosure; notice of right to receive appraisal report; servicing disclosure statement; borrower's Certification of Authorization; notice of credit score; RESPA servicing disclosure letter; loan discount fee disclosure; business insurance company arrangement disclosure; notice of right to rescind.

Moreover, Ms. Alley alleges that the "Lender charged fees to Petitioner that were in violation of the limitations imposed by the Real Estate Settlement Procedures Act."  Ms. Alley contends that "[n]either at settlement, nor at any other time, did Lender or Trustee provide documentation to show that the fees herein listed were valid, necessary, reasonable, and proper to charge Petitioner."  The Original Petition indicates that Ms. Alley is disputing the reasonableness and validity of a number of specific charges.

Although RESPA requires certain disclosures at the time the real estate transaction closes, *see* 12 U.S.C. §§ 2603 and 2604, the statute does not provide a private right of action for violations of those disclosure requirements.  *See Delino v. Platinum Community Bank*, 628 F. Supp. 2d 1226, 1232 (S.D. Cal. 2009) ("Section 2604 does not provide a private civil remedy for

a failure to provide a good faith estimate"); *Reese v. 1st Metro. Mortg. Co.*, 2003 WL 22454658 *15 (D. Kan. Oct. 28, 2003) ("Sections 2603 and 2604 outline the disclosures which lenders must provide borrowers, but they do not create a private right of action against mortgage lenders who fail to make such disclosures."); *Carr v. Home Tech Co., Inc.*, 476 F. Supp. 2d 859, 869 (W.D. Tenn. 2007) ("no private right of action exists for violations of § 2604(c)") (citing *Collins v. FMHA-USDA*, 105 F.3d 1366, 1367-68 (11th Cir. 1997) (holding no implied private right of action exists for violations of § 2604(c)). To the extent Ms. Alley wishes to pursue a private claim for RESPA disclosure violations, the Original Petition fails to state a claim for which relief may be granted.

Section 2605 of RESPA does impose certain disclosure obligations on loan servicers who transfer or assume the servicing of a federally related mortgage loan.[10]  *See* 12 U.S.C. § 2605. *Cf. Marsh v. BAC Home Loans Servicing, LP*, 2011 WL 1196415, at *6 (M.D. Fla. 2011). However, to support a claim under § 2605(e), Ms. Alley would have to allege that she sent Aurora Loan Services a valid Qualified Written Request under § 2605(e)(1)(B) and that ALS failed to respond within the statutorily mandated 60 day period. The Original Petition is devoid of any factual allegations that support a claim under § 2605.

Even if such a claim could be made, it would be time barred. RESPA sets forth the time

---

[10]In this case, the Original Petition does not describe Aurora Loan Services as a "loan servicer" under § 2605. *Cf. Ambriz v. Equifirst Corp.*, 2010 WL 2754248, at *2 (S.D. Cal. 2010) (holding that plaintiff had failed to state a claim under 12 U.S.C. § 2605 where the complaint did not allege how defendant met the statutory definition of "servicer" and thereby had a duty to notify, what entities were involved in the transfer or when the alleged transfer took place).  *See also Stejic v. Aurora Loan Services, LLC,* 2009 WL 4730734, at *5 (D. Ariz. 2009) (holding that the plaintiff's RESPA claims failed where the Complaint failed to set forth sufficient facts to sustain a cause of action under § 2605).

limitations for bringing actions under § 2605:

> Any action pursuant to the provisions of section 6, 8, or 9 [12 USCS § 2605, 2607, or 2608] may be brought in the United States district court or in any other court of competent jurisdiction, for the district in which the property involved is located, or where the violation is alleged to have occurred, within 3 years in the case of a violation of section 6 [12 USCS § 2605] and 1 year in the case of a violation of section 8 or 9 [12 USCS § 2607 or 2608] from the date of the occurrence of the violation. . . .

12 U.S.C. § 2614.  The loan at issue in this case closed on June 21, 2006.  *See Snow v. First American Title Ins. Co.*, 332 F.3d 356, 359 (5th Cir. 2003) ("'the date of the occurrence of the violation' refers to the closing").  Ms. Alley filed this action on September 3, 2010.  For the reasons previously stated, Plaintiff has failed to present a sufficient factual basis to warrant equitable tolling.  *See Mullinax v. Radian Guaranty, Inc.*, 199 F. Supp. 2d 311, 328 (M.D. N.C. 2002) ("RESPA's statute of limitations period is therefore subject to equitable tolling").  Pursuant to the three-year time limitation to bring claims under § 2605, any presumptive claim under RESPA should be dismissed as time barred.

II.     *Motions for Injunctive Relief*

On the same day she filed her Original Petition, Ms. Alley also filed a Petition for Temporary Injunction, as well as a Petition for Temporary Restraining Order and Memorandum in Support of Request for Temporary Restraining Order.  The Petition for Temporary Restraining Order requests that "Defendant be prevented from foreclosing on and selling the property until and unless defendant prevails in the current litigation" and that the federal court "[e]nter judgment for plaintiff."  The Petition for Temporary Injunction reiterates the allegations in the Original Petition and asks for the same relief requested in the Petition for Temporary Restraining

Order.  This court has been advised that on September 9, 2010, Ms. Alley's property at 492

South Rockcliff Circle, Pagosa Springs, Colorado was the subject of a Public Trustee's

Foreclosure Sale, and thus is no longer in Plaintiff's possession.  I conclude these Petitions must

be denied.

"[A] preliminary injunction is by its nature a temporary measure intended to furnish

provisional relief while awaiting a final judgment on the merits." *Pinson v. Pacheco*, 2011 WL

2064877, at *4 (10th Cir. 2011).  Thus, in order to obtain preliminary injunctive relief, the

moving party bears the burden of establishing, along other elements, that he or she has  a

likelihood of success on the merits of the underlying claims.  *Soesbe v. Countrywide Home

Loans*, 2009 WL 3418212, at *1 (D. Colo. Oct. 20, 2009).  "[B]ecause a preliminary injunction

is an extraordinary remedy, the right to relief must be clear and unequivocal." *Id.*  (citation

omitted).  Moreover, it is well-established motions for preliminary injunctions are disfavored to

the extent the moving party seeks to alter the status quo or obtain all the relief he or she could

recover at the conclusion of a full trial on the merits." *Id.*

In light of the foregoing recommendation to grant Defendant's Motion to Dismiss, this

court cannot find that Ms. Alley has demonstrated a substantial likelihood of success on the

merits.  Further, Ms. Alley's request for injunctive relief is now moot, as the subject property has

been sold.  Plaintiff's Petitions would have this court disturb the status quo and effectively

reverse  the Archuleta County District Court's Order Authorizing Sale and the Public Trustee's

foreclosure sale. *Cf. Bank of New York as Trustee v. Mehner*, 375 F. Supp. 2d 1316, 1319

(D.N.M. 2005) (in denying a motion for temporary restraining, the court noted that "[f]ederal

courts are reluctant to get involved in local real estate matters, which are generally state

matters," particularly where the dissatisfied property owner had an opportunity to present their case in state court).

## CONCLUSION

Having reviewed the Original Petition and the arguments advanced in the parties' briefs, I conclude that Defendant's Motion to Dismiss should be granted. The Original Petition simply lacks sufficient well-pled allegations to satisfy Rule 8 or to defeat a motion to dismiss under Rule 12(b0(6). However, I also note that Plaintiff's Response brief suggests she has additional unspecified information that might cure some or all of the aforementioned deficiencies. Out of an abundance of caution, I believe the better course of action is to dismiss without prejudice the current Petition, while allowing Plaintiff leave to submit an amended complaint that fully complies with the pleading requirements established by the Federal Rules of Civil Procedure and recent Supreme Court decisions. *Cf. Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990) (suggesting that dismissal without prejudice is preferable when deficiencies in a complaint are attributable to a *pro se* litigant's ignorance of pleading standards). *See also Vann v. Aurora Loan Services, LLC*, 2011 WL 2181861, at *2 (N.D. Cal. 2011) (while dismissing the complaint with leave to amend, the court admonished the plaintiff that "she must ensure that the amended complaint contains factual allegations showing why defendant is liable for each of those claims); *Brackhahn v. GMAC Mortgage LLC Corporation Service Company*, 2010 WL 5827412, at *4 (D. Colo. 2010) (in recommending dismissal of the original complaint, the magistrate judge acknowledged the possibility that it might be possible for the plaintiff to cure the pleading deficiencies in their claims).

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that Defendant Aurora

Loan Service, LLC's Motion to Dismiss (doc. # 14) be GRANTED and that this civil action be

DISMISSED WITHOUT PREJUDICE.  This court further RECOMMENDS that Plaintiff's

Petition for Temporary Injunction (doc. #2) and Petition for Restraining Order (doc.#3 be

DENIED.


**Advisement to the Parties**

Within fourteen days after service of a copy of a Magistrate Judge's order, a party may

serve and file written objections to the order.  Fed. R. Civ. P. 72(a).  "A judge of the court may

reconsider any pretrial matter . . . where it has been shown that the magistrate judge's order is

clearly erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(A).  *See also* Fed. R. Civ. P. 72(a)

("The district judge in the case must consider timely objections and modify or set aside any part

of the order that is clearly erroneous or is contrary to law.").  Failure to make timely objections

to the Magistrate Judge's order(s) may bar review by the District Judge and will result in a

waiver of the right to appeal.  *See Riviera Drilling & Exploration Co. v. Gunnison Energy Corp.*,

2011 WL 14461 (10th Cir. Jan. 5, 201) ("the firm waiver rule ordinarily prevents us from

reviewing a magistrate judge's ruling if the aggrieved party failed to file proper objections to that

ruling in the district court") (citations omitted);  *Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th

Cir. 1997) ("[p]roperly filed objections resolved by the district court are a prerequisite to our

review of a magistrate judge's order under 28 U.S.C. § 636(b)(1)(A)").


DATED this 21st day of July, 2011.

BY THE COURT:

  s/Craig B. Shaffer
United States Magistrate Judge